JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

IRAN ISRAEL IRIAS UCLES,

              Plaintiff,

      v.

CALIBER HOLDINGS, LLC et al,

              Defendants.

Case No.: 2:26-cv-00897-MEMF-BFM

**ORDER GRANTING MOTION TO REMAND [DKT. NO. 7]**

      Before the Court is the Motion to Remand filed by Plaintiff Iran Israel Irias Ucles. Dkt. No. 7 ("Motion"). The Court finds this matter appropriate for resolution without oral argument *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court hereby GRANTS the Motion.

1

## I.    Background

### A.  Factual Background[1]

Plaintiff Iran Israel Irias Ucles ("Ucles"), a 42-year-old Hispanic male, was employed by Defendants for over seven years from October 2015, until his termination on or about February 10, 2023. Compl. ¶ 11. Ucles was hired by Regional Manager Mike Townley to the position of Paint Department Manager. *Id.* At all times during his employment, Ucles performed his job duties in an exemplary manner. *Id.*

In or around November 2018, Ucles suffered a back injury while helping coworkers move a vehicle without a forklift. *Id.* ¶ 12. Two days later, Ucles became concerned that the pain would become exacerbated by working. *Id.* As such, Ucles reported his injury to his manager. *Id.* However, rather than discuss what, if any accommodation could be afforded to Ucles, Ucles' manager pressured him to continue working. *Id.* As a result, Ucles was forced to continue working without accommodation. *Id.* Defendants' failure to accommodate Ucles ultimately exacerbated his condition. *Id.*

In or around March 2019, Ucles requested two weeks of paternity leave from General Manager R. DOE, for the birth of his daughter. *Id.* ¶ 13. However, R. Doe denied the request. *Id.* Ucles was only able to take one day off for his daughter's birth and to care for his partner during her recovery. *Id.* Following R. Doe's refusal to provide him with leave, Ucles complained to Regional Manager, Rocio Gutierrez. *Id.* However, rather than address Ucles' complaint, Gutierrez dismissed his concerns. *Id.*

In or around August 2019, Ucles began experiencing respiratory issues. *Id.* As a result, he requested protective gear from General Manager, Nino Sgro, and Gutierrez. *Id.* The masks that Ucles had been using were several years old, and insufficient in light of his asthma. *Id.* However, rather than discussing this, or a potential alternative accommodation, Defendants disregarded Ucles's

---

[1] Unless otherwise indicated, the following factual background is derived from Plaintiff's Complaint. Dkt. No. 1-1 ("Compl."). For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

requested accommodation. *Id.* At various times throughout 2019 and 2020, Ucles renewed his request for accommodations, however, his complaints were continually ignored. *Id.*

As a result of being denied accommodations, in or around December 2019, Ucles filed a complaint with the California Occupational Safety and Health Administration. *Id.* After receiving notice of Ucles' complaint, Sgro became angry and scolded Ucles for making his complaint. *Id.* Thereafter, Ucles received a retaliatory write-up from Sgro, falsely accusing him of attendance and work quality issues. *Id.* Ucles objected to this write-up, believing it to be issued in retaliation. *Id.* However, his objections fell on deaf ears. *Id.*

In or around late March 2020, Ucles requested time off from General Manager A. DOE, for the birth of his daughter and to care for his disabled partner. *Id.* In response, A. Doe denied Ucles' paternity leave without justification. *Id.*

In or around December 2022, Ucles made a complaint to Ray Solis, the Human Resources Department and General Manager, and Shirley Curran, the Human Resources Manager, about being precluded from receiving meal and rest breaks and being required to work unpaid overtime. *Id.* Solis disregarded this complaint, claiming that since Ucles was commission-based, he was not entitled to overtime pay. *Id.* In fact, Ucles was to be paid on a piece-rate compensation plan in addition to his hourly wage. *Id.* Nonetheless, Ucles' complaint was never addressed or otherwise rectified. *Id.*

In or around 2022, Ucles made a complaint to management regarding employees smoking next to the paint spray booth. *Id.* Specifically, he complained about the serious health and safety issues arising from smoking near combustible materials involved in painting. *Id.* Despite his complaint, no investigation was conducted nor was any remediation undertaken. *Id.* Notably, General Manager, Jose Serrano, was aware of this practice and was present during and even joined in on conversations with other employees while they smoked. *Id.*

In or around December 2022, when Ucles returned from the bathroom, Jack DOE, an Estimator, stated, "The way you guys paint, you should go paint in Tijuana." *Id.* Ucles was deeply offended by this comment that he believed was directed at his race. *Id.* Accordingly, Ucles complained about the remark to Curran. *Id.* However, Curran disregarded his complaint, appearing

to take the view that Ucles should accept such comments because they were common in the workplace. *Id.*

Later that month, Ucles and Edgar DOE, a Detailer, were written up for allegedly drinking alcohol on the job. *Id.* It was regular practice for employees to drink alcohol on the premises after work hours. *Id.* Despite this, Ucles and E. Doe were the first ever to receive write-ups for allegedly doing so. *Id.* Ucles objected to Curran's write-up and requested that Defendants review the surveillance cameras to confirm that he had not in fact been drinking. *Id.* However, Curran denied this request, leading Ucles to believe the allegations were being manufactured to terminate him. *Id.*

Later that month, Vahan Gabriyelyan, a Regional Manager, and Serrano called Ucles into the office. *Id.* During that meeting, they informed Ucles that there were issues with his work. *Id.* However, this was the first time Ucles was made aware of any such issues, and nonetheless, the assertions regarding his performance directly conflicted with the performance metrics he regularly received regarding his performance. *Id.* As such, this left Ucles feeling as though he was being targeted. *Id.*

In or around early January 2023, Ucles made a second complaint to Cal OSHA, this time regarding the employees who continued to smoke next to the paint spray booth. *Id.* Specifically, Ucles complained to Cal OSHA that he had raised this issue with Defendants on multiple occasions, but to no avail. *Id.* In response, Ucles was instructed by Cal OSHA to leave the premises with his workers when this occurred and pending an investigation. *Id.* That same month, Ucles began having serious respiratory issues, shoulder pain, and headaches. *Id.* Thereafter, he acquired a doctor's note and requested a medical leave. *Id.* Ucles sent the doctor's note to Curran and Gabriyelyan. *Id.*

Following his return from leave in or around late January 2023, Ucles learned of a company-wide rumor that he was going to be terminated. *Id.* Later that month, Serrano told Ucles that he had corporate approval to fire him for any mistake he might make. *Id.*

On February 10, 2023, Gabriyelyan and Dustin Doe, a manager, terminated Ucles. *Id.* ¶ 14.

///

///

///

### B. Procedural History

On October 17, 2025, Ucles filed a Complaint in Los Angeles County Superior Court asserting causes of action against Caliber[2] for: (1) discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) hostile work environment harassment in violation of the PEHA; (3) retaliation in violation of the FEHA; ( 4) failure to provide reasonable accommodation in violation of the FEHA; (5) failure to engage in the interactive process in violation of FEHA; (6) failure to prevent discrimination, harassment, or retaliation in violation of FEHA; (7) negligent hiring, supervision, and retention; (8) wrongful termination of employment in violation of public policy; (9) whistleblower retaliation (California Labor Code § 1102.5); (10) discipline/discharge for disclosing working conditions (California Labor Code § 232.5); (11) retaliation for workplace safety complaints (California Labor Code § 631 0); (12) violation of California Labor Code § 6311; (13) retaliation for exercising rights (California Labor Code § 98 .6); ( 14) violation of Labor Code § 6400; (15) CFRA leave retaliation; (16) failure to provide meal and rest breaks (California Labor Code §§ 226.7, 226.2, 512, 516, 558; (17) rest period violations (California Labor Code §§ 226.7, 226.2, 516, 558); (18) failure to pay all overtime wages (California Labor Code §§ 204 510, 558, 1194, 1198); and (19) intentional infliction of emotional distress against Caliber Holdings of California LLC and Caliber Holdings L.L.C. *See* Compl.

On January 28, 2026, Caliber removed the action to this Court. Dkt. No. 1 ("NOR"). On February 25, 2026, Ucles filed a First Amended Complaint in Los Angeles County Superior Court. Dkt. No. 7-3.

On February 27, 2026, Ucles filed the instant Motion. Motion. On March 13, 2026, Caliber filed an Opposition to the Motion. Dkt. No. 9 ("Opposition"). On March 20, 2026, Ucles filed a Reply. Dkt. No. 10 ("Reply").

///

///

///

///

---

[2] References to "Caliber" will be to Caliber Holdings LLC.

5

## II.    Applicable Law

In general, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a). Federal courts have jurisdiction over "diversity" cases, between "citizens of different States." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). Diversity jurisdiction requires that (1) all plaintiffs be of different citizenship from all defendants, and (2) the amount in controversy exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

With respect to the amount-in-controversy requirement, the district court first considers whether it is "facially apparent" from the complaint that at least $75,000 is in controversy. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). When this is not apparent from the complaint, the amount in controversy alleged by the defendant is normally accepted. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022). However, if the plaintiff contests the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id.* (quoting *Dart Cherokee*, 574 U.S. at 88). In addition to considering the facts presented in the removal petition, defendants can submit any "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *See Singer*, 116 F.3d at 377. (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)).

The removing party may rely on "a chain of reasoning that includes assumptions" so long as "the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)). These assumptions may be reasonable if they are grounded in the allegations of the complaint. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019).

## III.    Discussion

Ucles contends that Caliber failed to: (1) demonstrate complete diversity; (2) establish fraudulent joinder; and (3) meet the requisite amount in controversy. Motion at 6-7. In response, Caliber asserts that: (1) Ucles did not comply with Local Rule 7-3; (2) the First Amended Complaint

is improper; and (3) it sufficiently established the amount in controversy. *See generally* Opposition. For the reasons stated herein, the Court grants the Motion.

### A. Denial of the Motion For Noncompliance With Local Rule 7-3 Is Not Warranted.

Local Rule 7-3 provides that for all motions, counsel "must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3. "The conference must take place in person, by telephone, or via video conference at least 7 days prior to the filing of the motion." *Id.* Pursuant to the Court's Civil Standing Order, "[t]he Court may strike or outright deny a motion or other relief if counsel fails to meet and confer in good faith." Civil Standing Order § VIII(A).

As an initial matter, Caliber argues that Ucles "failed to meet and confer as required by Local Rule 7-3." Opposition at 11. Ucles concedes that the "parties have not yet held a conference . . . to discuss the issues in the instant motion substantively." Motion at 3.

The Court notes that Ucles did email Caliber's counsel on February 25, 2026. Dkt. No. 7-1 ¶ 8. However, as stated by Caliber, this correspondence was made only two days before the Motion deadline and thus, Ucles failed to "meet timely and confer [seven] days prior to filing" the Motion. C.D. Cal. L.R. 7-3; Opposition at 12; Dkt. No. 12-1 ¶ 6. As such, Ucles has failed to comply with Local Rule 7-3. Although Ucles has failed to comply with Local Rule 7-3, it appears that Ucles attempted to meet and confer with Caliber in good faith and thus, the Court will not deny the Motion on this basis. The parties are admonished that future failures to comply with Court Orders may result in the Court declining to consider the parties' briefing.

### B. The First Amended Complaint Is Improper.

Ucles provides that the First Amended Complaint is the operative complaint that determines jurisdiction. Motion at 5. Caliber contends that the First Amended Complaint is improper and has no legal effect on the basis that: (1) it was filed in Los Angeles Superior Court *after* the Notice of Removal; and (2) Ucles failed to comply with Federal Rule of Civil Procedure 15(a). Opposition at 13-14.

Here, Ucles filed the original Complaint on October 17, 2025, in Los Angeles Superior Court. Dkt. No. 1-1 at 3. Caliber removed the action to federal court on January 28, 2026. Dkt. No.

1. And Ucles filed its First Amended Complaint on February 25, 2026, in Los Angeles Superior Court. Dkt. No. 7-3.

First, once Caliber removed the action to federal court, the Los Angeles Superior Court lacked jurisdiction over this action. *See* 28 U.S.C. § 1446(d) ("[T]he State court[, once the action is removed,] shall proceed no further unless and until the case is remanded."). Thus, Ucles's First Amended Complaint has no legal effect on the Court's analysis.

Second, even if the First Amended Complaint was filed in this Court, Ucles failed to comply with Federal Rule of Civil Procedure Rule 15(a). Under Federal Rule of Civil Procedure 15(a), a party seeking to amend an Answer may do so once "as a matter of course" within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1)(A). A party seeking to amend an Answer more than twenty-one (21) days after serving it "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the First Amended Complaint was filed one hundred and thirty-one (131) days after the original Complaint, Ucles was required to seek leave of court or Caliber's consent. As Ucles did obtain either the Court's leave or Caliber's consent, the First Amended Complaint fails to comply with Rule 15. *Id.* Given this, his reliance on *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39 (2025) is unavailing because there, the plaintiff *properly* amended the original complaint and thus, the first amended complaint was operative.

Taken together, the First Amended Complaint is improper and has no legal effect.

### C. The Amount in Controversy Is Not Satisfied.

The Court will first address whether Caliber has satisfied its burden to demonstrate the amount of controversy. Caliber argues that it "has thoroughly and sufficiently laid out the relevant authority and ample evidence to establish the amount in controversy exceeds $75,000." Opposition at 23. Ucles claims that the amount in controversy is unclear because he did not provide an amount and Caliber's computations are based on speculative assumptions. Motion at 10-11.

Because Ucles contests the amount in controversy presented in the Notice of Removal, Caliber bears the burden of presenting summary judgment type evidence and demonstrating by a preponderance of the evidence that the amount-in-controversy requirement has been met. Caliber

does not present any such evidence in its Opposition and relies solely on the Adams Declaration, which was attached to the Notice of Removal. But the Adams Declaration merely establishes that payroll records indicate that Ucles "earned an hourly base pay rate of $31.92 / hour." Dkt. No. 1-3 ¶ 6. There is no evidence as to the hours worked by Ucles or anything else that would establish his back pay or front pay. In his Original Complaint, Ucles asserts that he has suffered harm "including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages." Compl. ¶ 15. Because Ucles was terminated in February 2023 and would be entitled to back pay and front pay under California Labor Code § 1102.5, Caliber argues that the possible recovery from February 2023 to the present is at least $132,787.20. Dkt. No. 1-3 ¶¶ 5-6, 8. Although Caliber states that the $31.92/hour rate of pay is based on a review of employment records, it does not state or show that the $132,787.20 is based upon the employment records—or any reasonable assumptions. In particular, Caliber fails to detail the "number of hours per week used, whether overtime work is included, or whether the calculation assumes full-time work." Reply at 8. Thus, Caliber's computation is based on speculative assumptions, and the wage-loss calculation is not sufficiently supported. And because punitive damages are derived from the compensatory damages, Caliber has also failed to substantiate its punitive damages computations. *Roby v. McKesson Corp.*, 219 P.2d 749, 770-71 (Cal. 2009).

Further, in the Notice of Removal, Caliber claims that since Ucles alleges emotional distress damages, Compl. ¶¶ 16, 24, 32, 39, 47, 55, 63, 71, 78, 86, 91, 97, 105, 113, 130-132, then such damages should be included in the amount in controversy. NOR ¶¶ 32-33. In particular, Caliber states that emotional distress damages at stake are at least $75,000. *Id.* Ucles similarly argues that Caliber did not submit any evidence reasonably quantifying its emotion distress damage computation. Reply at 9. Caliber cites to *Gardenhire v. Hous. Auth.*, 101 Cal. Rptr. 2d 893, (Cal. Ct. App. 2000), contending that California courts have determined emotional distress damages of $125,000 in employment disputes. NOR ¶ 33. But as emphasized by Ucles, the Original Complaint does not set forth a quantifiable amount. *See* Compl; Reply at 9. And Caliber "does not connect the cited verdict to [Ucles'] specific pleaded facts, claimed severity, duration, medical treatment, or

other case-specific indicators." *Id.* As such, Caliber has failed to provide summary judgment type evidence to support its amount in controversy claim as to emotional distress damages.

The Court also finds that Caliber failed to substantiate its attorneys' fees computation. In the Notice of Removal, Caliber suggests that attorneys' fees are recoverable and relies on Ninth Circuit precedent holding that attorneys' fees can be included in the amount in controversy. NOR ¶¶ 34-36. Beyond its assertion that attorneys' fees are recoverable, Caliber does not discuss "expected hours, rates, staffing, or litigation stage." Reply at 9. Thus, Caliber does not provide a reasonable basis for an attorneys' fee amount in this matter.

Taken together, the Court finds that Caliber has failed to demonstrate that the amount in controversy exceeds $75,000.

Accordingly, the Court finds that it does not have diversity jurisdiction under 28 U.S.C. § 1332, and the Court therefore need not reach the other arguments of the parties.

**IV.    Conclusion**

For the foregoing reasons, the Court GRANTS the Motion and ORDERS as follows:

1.   The Motion to Remand (Dkt. No. 7) is GRANTED.

2.   The Case is REMANDED to the Superior Court of California for the County of Los Angeles.

IT IS SO ORDERED.

Dated: April 15, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

10